IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEON V. LIPSCOMB, | |
| Plaintiff, | |
| v. | Case No. 23-cv-3959-NJR |
| ANTHONY WILLS, JILIAN CRANE, and KYLE A. BRUMLEVE,[1] | |
| Defendants. | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Keon V. Lipscomb, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. On December 4, 2023, Lipscomb filed a motion to amend in the case *Lipscomb v. Rice, et al.*, Case No. 23-cv-2800-NJR (Doc. 23). In the motion, Lipscomb raised new claims regarding an alleged sexual assault by Sergeant ("Sgt.") Kyle A. Brumleve. He also sought injunctive relief in the form of a temporary restraining order ("TRO"). Given the serious nature of the allegations, the Court ordered a new case to be opened and directed that the motion to amend be filed in the new case as a motion for TRO. Once the current case was opened, Lipscomb was ordered to inform the Court whether he wanted to pursue the claims as a

---

[1] The Clerk of Court is DIRECTED to CORRECT the docket to reflect Sgt. Brumleve's proper name as identified by Lipscomb in the Complaint. Sgt. Brumleve is identified as Kyle A. Brumleve.

1

new case and directed to file a formal Complaint (*See* Doc. 3). On December 28, 2023, Lipscomb filed a formal Complaint in this case (Doc. 10). He also filed several motions, including a motion to correct (Doc. 8), a motion for help (Doc. 9), and a request for a TRO (Doc. 11).

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

In the Complaint, Lipscomb makes the following allegations: On November 20, 2023, Lipscomb had an attorney call and, after the call, he was escorted back to his cell by correctional officer L. Korando (Doc. 10, p. 4). Korando informed Lipscomb that Sgt. Brumleve and Lieutenant Moore ordered Lipscomb be housed in a cell with a steel door, rather than the barred cell Lipscomb inhabited at the time (*Id.*). Korando indicated that the placement decision was in response to a letter Lipscomb wrote to counselor Leah Strong requesting access to electronics (*Id.*). Lipscomb alleges that he wrote a letter asking if he fit the criteria for receiving access to a television and tablet due to his lack of recent infractions (*Id.*). Korando placed Lipscomb in the mental health room to speak with mental health staff. Lipscomb declared a hunger strike and asked mental health staff to

place him on suicide watch because he felt like hurting himself in response to what he believed to be harassment by Brumleve.

While in the mental health room, Brumleve approached Lipscomb and threatened to kill him if he did not go into the new cell with a solid door (*Id.*). Brumleve informed Lipscomb that he was being punished for writing the letter to his counselor, noting that the letter included "sexual stuff" (*Id.*). Lipscomb denied the allegations and requested a formal infraction be written, but Brumleve stated that a formal disciplinary ticket would not be issued because the language in the letter was "not ticket worthy" and was "borderline inappropriate" (*Id.* at pp. 4-5). Brumleve again threatened to hurt Lipscomb if he did not go into the new cell and stated that Lipscomb was "lucky no one has sexual assaulted your ass" (*Id.* at p. 5). Brumleve left the mental health room, and Lipscomb remained in the room for an unstated amount of time.

During Lipscomb's time in the mental health room, he alleges that another unnamed officer entered the room and threatened that "something bad [was] about to happen" to Lipscomb (*Id.*). Lipscomb informed the officer that he was declaring a hunger strike and felt suicidal (*Id.*).

Sometime later, Brumleve reentered the room and approached Lipscomb with a knife, which Brumleve produced from his pocket (*Id.*). Brumleve punched Lipscomb in the face and head, held the knife to Lipscomb's throat, and threatened to kill him if he screamed (*Id.*). Brumleve then began pulling off Lipscomb's clothes. Lipscomb alleges that he could not defend himself because he was handcuffed behind his back and shackled to the seat (*Id.*). Brumleve continued to beat Lipscomb and eventually

3

penetrated Lipscomb from behind (*Id*.). Lipscomb alleges that during the rape, Brumleve licked Lipscomb's neck (*Id*.). After the rape, Brumleve left the room (*Id*.).

Lipscomb alleges that he informed correctional officers and mental health staff about the rape, but they failed to help him. Although the penetration caused tears and bleeding, Lipscomb never received medical care for the injuries (*Id*. at p. 6). He wrote the John Howard Association informing them of the rape and staff's refusal to provide him with medical care or file a report under the Prison Rape Elimination Act (*Id*.). Lipscomb again declared a hunger strike, hoping that he would be moved from Sgt. Brumleve's area of the prison, but he was not moved.

While on hunger strike, on or about November 28, 2023, Lipscomb informed Jilian Crane of the rape (*Id*.). While walking by his cell, Crane told him to shut up and threatened Lipscomb, informing him that she knew of another individual who she could order to rape Lipscomb (*Id*.). On November 29, 2023, Korando also threatened to have Lipscomb raped again (*Id*.).

On December 24, 2023, Lipscomb was interviewed by internal affairs concerning the sexual assault, but Lipscomb alleges that nothing came of the investigation. On December 26, 2023, Brumleve again threatened him, which Lipscomb alleges proves that staff refuse to protect him from future assault (*Id*.).

## **Preliminary Dismissals**

Throughout the Complaint (Doc. 10), Lipscomb refers to several unknown correctional staff and mental health staff who failed to provide him with care after the assault or failed to protect him from future assaults. He also refers to unknown

defendants and "medical staff" who refused to provide him care, report the rape, or protect him from future assault by Brumleve and others. Lipscomb fails to point to a specific individual, nor does he describe any of these staff members. Although Lipscomb may certainly proceed against identified John Does (*i.e.* John Doe #1, John Doe #2, *etc.*), his potential claims against staff, mental health staff, medical staff, or "defendants" are too generic to state a claim. Any potential claims against staff are **DISMISSED without prejudice**.

Lipscomb also refers to L. Korando, an officer who escorted him to the mental health room and later threatened him in late December 2023. Although initially identified as a defendant in his motion for a TRO (Doc. 2), Korando is not listed in the Complaint's caption or as a party in the case (Doc. 10, pp. 1-2). Thus, any claim against Korando is **DISMISSED without prejudice**. *Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption"). Lipscomb's motion to correct Korando's name is **DENIED as moot** (Doc. 8).

## Discussion

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts:

    **Count 1:**    **Brumleve sexually assaulted and used excessive force against Lipscomb in violation of the Eighth Amendment.**

    **Count 2:**    **Illinois state law claim for assault and battery against Brumleve for the assault.**

    **Count 3:**    **Jilian Crane verbally harassed Lipscomb after the assault and refused to report the assault in violation of the Eighth Amendment.**

| | |
|---|---|
| Count 4: | Illinois state law claim for intentional infliction of emotional distress against Brumleve and Jilian Crane for the rape and continued threats of rape. |
| Count 5: | Eighth Amendment failure to protect claim against Defendants for failing to prevent the assault by Brumleve and failing to protect Lipscomb from future assault. |
| Count 6: | Eighth Amendment deliberate indifference claim against Jilian Crane for failing to provide medical care to Lipscomb after the assault. |
| Count 7: | First Amendment retaliation claim against Jilian Crane for threatening Lipscomb and failing to provide him with medical care in retaliation for Lipscomb filing grievances and lawsuits. |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard**.[2]

**Counts 1 and 2**

Lipscomb states a claim against Sgt. Brumleve for the assault and excessive force alleged in Count 1. *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000); *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000) ("A sexual assault on an inmate by a guard…is deeply offensive to human dignity").

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

Lipscomb also states a claim against Sgt. Brumleve in Count 2 for the assault and battery.

**Count 3**

Verbal harassment, even of a sexual or racial nature, generally does not rise to the level of a constitutional violation, though some harassment may be serious enough to constitute cruel and unusual punishment. *DeWalt*, 224 F.3d at 612 (simple verbal harassment, including racial and sexual harassment, does not state a claim); *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015) (finding that verbal sexual harassment, accompanied by suggestive gestures, that created a risk both from the harasser and fellow inmates, was sufficient to proceed beyond initial review). Some threats may rise to the level of cruel and unusual punishment. *Dobbey v. Ill. Dep't of Corr.*, 574 F.3d 443, 445 (7th Cir. 2009). "The test for what constitutes cruel and unusual punishment is an objective one. It is not the actual fear of the victim, but what a reasonable victim would fear." *Id.* (internal quotations omitted).

Jilian Crane's threats and actions are sufficient to state a claim in Count 3. Here, the threats made by Crane regarding future assaults, considering the alleged assault by Sgt. Brumleve, is serious enough to rise to the level of cruel and unusual punishment. Thus, Count 3 shall proceed against Jilian Crane.

**Count 4**

As to his intentional infliction of emotional distress claim in Count 4, Lipscomb must allege that defendants acted in an extreme and outrageous way, intended to inflict severe emotional distress or knew of the high probability that it would occur, and caused

the plaintiff to suffer from severe emotional distress. *See Doe v. Calumet City*, 161 Ill.2d 374, 392 (Ill. 1994) (citing Restatement (Second) of Torts § 46, comment d (1965)). His allegations against Brumleve and Crane meet that standard. Thus, Count 4 shall proceed against Brumleve and Crane.

**Count 5**

As to Lipscomb's failure to protect claim, he must first demonstrate, objectively, that he is "incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Second, the prison official must have actual knowledge of the risk to the inmate. *Id.* As to Lipscomb's claim that officials failed to prevent the assault by Brumleve, there are no allegations to suggest that either Crane or Warden Anthony Wills were aware of an impending assault prior to Brumleve's actions. Although he alleges that defendants knew that Brumleve "could not be trusted around inmates," he fails to offer any allegations to suggest their knowledge of Brumleve's propensity to attack inmates or Lipscomb.

Lipscomb also alleges that "defendants" failed to report the sexual assault and continue to threaten him, leaving him vulnerable to attack from staff. He specifically alleges that he informed Crane of the assault but she refused to report it and threatened to have Lipscomb raped again by other staff. The Court finds that these allegations state a claim against Crane in Count 5.

**Count 6**

Lipscomb also states a claim in Count 6 against Crane for deliberate indifference to his serious medical needs. He alleges that he informed Crane of the rape, but she failed

8

to provide him with any medical care (Doc. 10, p. 16). But to the extent that Lipscomb also alleges that Anthony Wills should have been aware of his need for medical care, Lipscomb fails to state a claim. Lipscomb only alleges that Wills should have known about the assault from his grievance and should have known that Lipscomb was supposed to be evaluated by medical staff. There is no indication that Lipscomb requested medical care from Wills, nor can Wills be liable for simply denying a grievance. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim."); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007). Warden Wills remains in the case, in his official capacity only, for the purpose of implementing any injunctive relief awarded to Lipscomb.

**Count 7**

Lipscomb also states a retaliation claim against Crane. Lipscomb alleges that he has written numerous grievances against Crane and has lawsuits pending against her. He alleges that Crane specifically stated that she would not provide medical care to him because of his lawsuits and grievances (Doc. 10, p. 14). This is enough to state a claim at this stage.

## Pending Motions

In addition to his Complaint, Lipscomb filed a "motion for help" (Doc. 9). A subsequent text entry for a motion for a TRO (Doc. 11) was also docketed based on the request for injunctive relief in Lipscomb's Complaint (Doc. 10, p. 17).

Lipscomb's motion for help (Doc. 9) provides additional allegations regarding his claims and care after the assault. He alleges on December 26, 2023, Crane informed him that she would not provide him with medical care and that she did not care about his complaints (*Id*. at p. 2). He has also received threats from other officers if he continued to speak about the assault (*Id*.). He also alleges that Anthony Wills failed to investigate the assault and failed to intervene to protect Lipscomb and provide him with medical care (*Id*. at p. 4). The Court will consider Lipscomb's motion (Doc. 9) as a supplement to his motion for TRO (Doc. 2). A separate text motion for TRO (Doc. 11) was docketed based on Lipscomb's request for injunctive relief in his Complaint (Doc. 10). Because Lipscomb's original motion for a TRO (Doc. 2) remains pending, the motion at Doc. 11 is **DENIED as moot**.

Warden Wills is **DIRECTED** to respond to the additional allegations raised in the motion for help (Doc. 9) and the formal Complaint (Doc. 10). His response deadline has been reset for **January 11, 2024** (Doc. 13).

## Disposition

For the reasons stated above, Counts 1 and 2 shall proceed against Brumleve. Counts 3, 5, 6, and 7 shall proceed against Jilian Crane. Count 4 shall proceed against both Brumleve and Crane. Anthony Wills will remain in the case, in his official capacity only, for the purpose of responding to Lipscomb's request for injunctive relief and implementing any injunctive relief awarded.

The Clerk of Court shall prepare for Defendants Kyle A. Brumleve, Jilian Crane, and Anthony Wills (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request

to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendants' place of employment as identified by Lipscomb. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Lipscomb, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Lipscomb, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Lipscomb is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

DATED:  January 4, 2024

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**